Adam Hosmer-Henner, Esq. (NSBN 12779)
Philip Mannelly, Esq. (NSBN 14236)
**McDONALD CARANO LLP**
100 West Liberty Street, 10th Floor
Reno, Nevada 89501
(775) 788-2000
ahosmerhenner@mcdonaldcarano.com
pmannelly@mcdonaldcarano.com

Maurice Baskin (DCBN 248898)
*Pro Hac Vice Application Forthcoming*
**LITTLER MENDELSON, P.C.**
815 Connecticut Avenue, N.W.
Washington, D.C. 20006
(202) 842-3400
mbaskin@litter.com
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * * * *

| | |
|---|---|
| NEVADA CHAPTER OF THE ASSOCIATED GENERAL CONTRACTORS OF AMERICA, INC., a Nevada nonprofit cooperative corporation; ASSOCIATED BUILDERS AND CONTRACTORS NEVADA CHAPTER, a Nevada nonprofit cooperative corporation; and NEVADA TRUCKING ASSOCIATION, INC., a Nevada nonprofit corporation,<br>      Plaintiffs,<br>v.<br>MARTY WALSH, Secretary, United States Department of Labor<br>      Defendant. | Case No:<br><br>**COMPLAINT FOR JUDICIAL REVIEW AND DECLARATORY AND INJUNCTIVE RELIEF UNDER THE DAVIS-BACON ACT AND ADMINISTRATIVE PROCEDURE ACT** |

## NATURE OF ACTION

1. This is an action for judicial review of the decision of the Secretary, United States Department of Labor, which was entered by his designees, the Administrative Review Board ("ARB"), in affirming a series of determinations by the Wage and Hour Administrator. *See Nevada Chapter of the Associated General Contractors of America, Inc.*, et al, Case No. 2020-0058 (ARB July 29, 2021) (attached as **Exhibit 1**). As further explained below, the Department unlawfully imported Southern Nevada (Clark County) wage data to establish the so-called

1  "prevailing wage" in Northern Nevada counties, contrary to the plain language of the Davis-Bacon Act ("DBA"), 40 U.S.C. § 3142(b) and the Department's own governing regulations, 29 C.F.R. Part 1. In doing so, the Department misapplied its regulations, or else such regulations themselves violate the DBA. By these and related actions, the Department acted in an arbitrary and capricious manner and otherwise in violation of law, including the DBA and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, entitling Plaintiffs to judicial review, and declaratory and injunctive relief.

**THE PARTIES**

2. Plaintiffs are Nevada trade associations representing construction contractors, transportation companies and related firms throughout the state. They specifically represent construction and transportation companies performing work covered by the DBA in civil subdivisions in Northern Nevada, including Carson City and the following counties: Washoe, Storey, Elko, Eureka, Humboldt, Pershing, White Pine, Churchill, Lander, Lincoln, Mineral, Douglas, and Lyon (the "Northern Nevada Counties"). Plaintiffs jointly filed the petition for review from the Wage and Hour Administrator's wage determinations that was the subject of the ARB's ruling referenced above, and Plaintiffs and their members are directly and adversely affected thereby. Plaintiffs have both direct standing and associational standing to bring this action on behalf of themselves and their member companies who must pay the higher rates unlawfully determined by the Administrator and the ARB to be prevailing in the above referenced Northern Nevada subdivisions, based upon the Department's violations of the DBA and the APA.

3. Defendants are government officials charged with enforcement of the DBA, in compliance with the statutory text and governing regulations, and in doing so they are required to comply with the APA. They are being sued here in their official capacities.

**JURISDICTION**

4. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question) because the Plaintiffs' causes of action arise under and allege violations of federal law, including the APA, 5 U.S.C. §§ 701-706 (APA jurisdiction to review

agency actions), the Davis-Bacon Act, 40 U.S.C. § 3142(b), and the Declaratory Judgment Act, 28 U.S.C. § 2201-2202 (declaratory relief). *See Univ. Research Assoc., Inc. v. Coutu*, 450 U.S. 754, 761, n.10 (1981), and cases cited therein; *see also Mistick PBT v. Chao*, 440 F. 3d 503, 508-9 (D.C. Cir. 2006), and additional cases cited.

5. Venue is properly vested in this Court pursuant to 28 U.S.C. § 1391(e), because one or more of the Plaintiffs are based within the judicial district of this Court.

6. Final agency action occurred in the form of the decision by the ARB in ARB Case No. 2020-0058 issued on July 29, 2021, which became final on August 26, 2021 (28 days after issuance), pursuant to Secretary's Order 01-2020. *See* 85 Fed. Reg. 13,186.

## FACTUAL BACKGROUND

7. The Davis-Bacon Act requires that the advertised specifications for covered government-funded construction projects contain a provision stating the minimum wages to be paid to mechanics and laborers on such projects. 40 U.S.C. § 3142(a). According to the Act: "The minimum wages shall be based on the wages the Secretary of Labor determines to be prevailing for the corresponding classes of laborers and mechanics employed on projects of a character similar to the contract work *in the civil subdivision of the State in which the work is to be performed*, . . . ." *Id*. at 3142(b) (emphasis added) (the "Statute").

8. The Wage and Hour Administrator has promulgated regulations governing the process for determining prevailing wages subject to the Statute. Pertinent to this case, 29 C.F.R. § 1.2(a) defines the "prevailing wage" as "the wage paid to the majority (more than 50 percent) of the laborers or mechanics in the classification on similar projects in the area during the period in question. If the same wage is not paid to a majority of those employed in the classification, the prevailing wage shall be the average of the wages paid, weighted by the total employed in the classification." Section 1.2(b) of the same rule defines the term "area" in determining wage rates to mean "the city, town, village, county or other civil subdivision of the State in which the work is to be performed." 29 C.F.R. § 1.2(b).

9. Section 1.3 of the Department's rules is entitled "Obtaining and compiling wage rate information." This section states, *inter alia*, that "the Administrator will encourage the

voluntary submission of wage rate data by contractors, contractors' associations, labor organizations, public officials and other interested parties, reflecting wage rates paid to laborers and mechanics on various types of construction in the area. The Administrator may also obtain data from agencies on wage rates paid on construction projects under their jurisdiction." 29 C.F.R. § 1.3(a) (emphasis added).

10. Section 1.7 of the Department's rules, is entitled "Scope of consideration." Section 1.7(a) states, *inter alia*, "In making a wage determination, the area will normally be the county unless sufficient current wage data … is unavailable to make a wage determination." 29 C.F.R. § 1.7(a).

11. Subsection (b) states: "If there has not been sufficient similar construction within the area in the past year to make a wage determination, wages paid on similar construction in surrounding counties may be considered, *Provided* That projects in metropolitan counties may not be used as a source of data for a wage determination in a rural county, and projects in rural counties may not be used as a source of data for a wage determination for a metropolitan county." *Id.* § 1.7(b) (emphasis in original).

12. Finally, subsection (c) states: "If there has not been sufficient similar construction in surrounding counties or in the State in the past year, wages paid on projects completed more than one year prior to the beginning of the survey or the request for a wage determination, as appropriate, may be considered." *Id.* § 1.7(c).

13. Nowhere does the DBA authorize the Department to look outside the civil subdivision where the covered work is to be performed in order to determine the prevailing wage for such work. Nor do the Department's regulations anywhere authorize the Department to look outside the "surrounding counties" of the county where the covered work is to be performed in order to determine the prevailing wage for such work. And nowhere does either the Statute or the Department's regulations authorize the Department to consider wage rates paid in labor markets in distant parts of a state (hundreds of miles away in this case) as the basis for setting the prevailing wage in the civil subdivision where the work is to be performed.

14. But that is what happened in the Department's 2017 wage survey and wage determinations at issue in the present case. In multiple wage determinations for the above listed Northern Nevada Counties, the Administrator claimed that because insufficient data for the northern counties was reported to the Department during the wage survey period, the Administrator was entitled to import wage data from Clark County, more than four hundred miles away. The Administrator made this claim with full knowledge that the prevailing construction wage rates in Clark County are much higher than the prevailing wages paid in Northern Nevada, which is an entirely separate labor market. Based on the Administrative Record, the Clark County rates are in many classifications double (100% higher than) the rates prevailing in Northern Nevada.

15. As a direct result of the Administrator's arbitrary and unauthorized actions in importing Clark County wage data into the wage survey for the Northern Nevada Counties, the Administrator set the prevailing wage rates in the Northern Nevada subdivisions at levels that in fact prevail only in Clark County and its surrounding counties, nowhere near the civil subdivisions where covered work was to be performed.

16. Compounding the foregoing violations of the Act and the Department's own regulations, the Administrator's justification for looking outside the Northern Nevada Counties for wage data was based on the false premise that insufficient wage data in the Northern Counties was available. In fact, sufficient wage data showing prevailing wage rates in the Northern Counties was publicly available in the office of the Nevada Office of the Labor Commissioner ("NOLC"). The Administrator failed to consider the publicly available data, based on the specious ground that the NOLC bore the responsibility to submit such data, though it was publicly available to the Administrator during the survey period, as the Administrator knew or should have known.

17. By letters dated October 18, 2019 and April 24, 2020, Plaintiff Nevada Chapter of the Associated General Contractors of America, Inc. ("AGC") asked the Administrator to review and reconsider the Northern Nevada wage determinations. The NOLC supported AGC's requests, showing that its own wage surveys performed from 2016 to 2019 established wage

rates in the Northern Nevada Counties that were uniformly and dramatically lower that the wage rates paid in Clark County. The Administrator denied AGC's requests for reconsideration, and refused to consider the NOLC data because it was not submitted during the Department's arbitrarily restricted survey period, even though it was publicly available to the Administrator during that time.

18. On July 28, 2020, AGC was joined by Co-Plaintiffs Associated Builders and Contractors Nevada Chapter ("ABC") and the Nevada Trucking Association, Inc. ("NTA") in appealing the Administrator's determinations to the ARB. As noted above, the ARB affirmed the Administrator's determinations in case No. 2020-0058 (July 29, 2021).

19. In its ruling, the ARB held *inter alia* that the Administrator was entitled to ignore the NOLC wage data because it was submitted too late, notwithstanding that the NOLC data was publicly available during the wage survey period, as the Administrator knew or should have known. The ARB also identified nothing in the Statute or the Department's regulations setting time limits on receipt of relevant information as to the prevailing wages actually paid in the counties being surveyed. ARB Dec. at 11-12.

20. The ARB went on to hold that, in the absence of the NOLC data for the Northern Nevada Counties, the Administrator "exercised reasonable discretion when she used statewide data to calculate prevailing rates in this case." ARB Dec. at 12. The ARB did not cite any language in the text of the Act or the Department's published regulations supporting this result. Instead, the ARB relied entirely on its own previous decision in the case of *Coalition for Chesapeake Housing Development*, ARB No. 2012-0010, in which the Board held, contrary to the Act and the Department's own regulations, that "the Administrator possesses the authority and discretion to use group, super group, or even statewide data to determine prevailing wage rates in appropriate circumstances." ARB Dec. at 13, citing *Chesapeake*, slip op. at 8. The ARB further claimed erroneously that nothing in the Statute or the Department's regulations prohibits this arbitrary result, notwithstanding the plain language quoted above at paragraphs 7-12 of this Complaint.

# COUNT I

## Violations of the Davis-Bacon Act and the Administrative Procedure Act

21. The decision of the ARB affirming the determination of the Administrator, as described above, was arbitrary and capricious and in violation of the plain language of the DBA and the Department's published regulations.

22. The Act expressly requires the Administrator to determine the rates "prevailing for the corresponding classes of laborers and mechanics employed on projects of a character similar to the contract work in the civil subdivision of the State in which the work is to be performed, . . . ." 40 U.S.C. § 3142(b).

23. Contrary to the ARB's holding, this language plainly prohibits the Administrator from using wage data from totally different labor markets in distant parts of the state, which data is known to be significantly different from the "rates prevailing "on projects of a character similar to the contract work in the civil subdivision of the State in which the work is to be performed." 40 U.S.C. § 3142(b).

24. In a like manner, the Department's published regulations cited above prohibit the Administrator from importing wage data from anywhere outside the "surrounding counties" being surveyed.

25. The regulations do not authorize the Administrator to import data from parts of the state that are distant from the civil subdivision in which the work is to be performed, particularly when the wages paid in such distant labor markets are known to differ widely from the rates in the area being surveyed. 29 C.F.R. Part 1.

26. To the extent the Department has interpreted its regulations to permit such importation of rates, then the regulations themselves (as misinterpreted) violate the plain language of the DBA.

27. The ARB's affirmance of the determination of the Administrator also violated the DBA and the APA by failing to require the Administrator to consider publicly available data maintained by the NOCL. Had the Administrator considered such wage data for the Northern Nevada civil subdivisions at issue in this case, there would have been no need for the

1  Administrator to import and improperly consider wage data from distant parts of the state which
2  it knew or should have known was dramatically (100%) higher than the wage rates prevailing in
3  the relevant civil subdivisions, even under the Department's erroneous interpretation of the Act
4  and the governing regulations.

**REQUEST FOR RELIEF**

28. To remedy the violations of law described above, Plaintiffs request the following relief:

(a) Entry of a judgment declaring that the decision of the Department's ARB in Case No. 2020-0058, and the Administrator decision(s) which it purported to affirm, were arbitrary, capricious, and otherwise in violation of law;

(b) Entry of an injunction preventing and restraining the Department from enforcing or otherwise implementing the ARB's and Administrator's decisions as described in this Complaint; and directing the Department to re-issue the challenged wage determinations in a manner consistent with the Davis-Bacon Act and the Department's published regulations;

(c) Award Plaintiffs their costs and reasonable attorneys' fees; and

(d) Provide any such other and further relief as this Court deems proper.

Dated:  September 27, 2021                McDONALD CARANO LLP

/s/ *Philip Mannelly*
Adam Hosmer-Henner, Esq. (NSBN 12779)
Philip Mannelly. (NSBN 14236)
100 W. Liberty Street, Tenth Floor
Reno, NV  89501
(775) 788-2000


LITTLER MENDELSON, P.C.

/s/ *Maurice Baskin*
Maurice Baskin (DCBN 248898)
*Pro Hac Vice Application Forthcoming*
815 Connecticut Avenue, N.W.
Washington, D.C. 20006
(202) 842-3400
*Attorneys for Plaintiffs*

## INDEX OF EXHIBITS

| EXHIBIT # | DESCRIPTION | NUMBER OF PAGES |
|---|---|---|
| 1 | *Nevada Chapter of the Associated General Contractors of America, Inc.*, et al, Case No. 2020-0058 (ARB July 29, 2021) | 22 |