# EXHIBIT 1

*Nevada Chapter of the Associated General Contractors of America, Inc., et al*, Case No. 20200058 (ARB July 29, 2021)

# EXHIBIT 1

**U.S. Department of Labor**   Administrative Review Board
200 Constitution Ave. NW
Washington, DC 20210-0001



In the Matter of:

| | |
|---|---|
| **NEVADA CHAPTER OF THE ASSOCIATED GENERAL CONTRACTORS OF AMERICA, INC.; ASSOCIATED BUILDERS AND CONTRACTORS, NEVADA CHAPTER; and NEVADA TRUCKING ASSOCIATION, INC.** | **ARB CASE NO.   2020-0058**<br><br>**DATE:  July 29, 2021** |

**With Respect to Review and Reconsideration of Davis-Bacon Wage Det. Nos. NV20190002, NV20190004, NV 20190005, NV 20190007, NV20190008, NV20190009, NV20190010, NV20190011, and NV20190013, Highway Construction in Elko; Eureka; Humboldt; Pershing; White Pine; Churchill, Lander, Lincoln and Mineral; Douglas and Lyon; Carson City; and Washoe and Storey Counties, Nevada.**

**Appearances:**

*For Petitioners:*
**Maurice Baskin, Esq., *Littler Mendelson, P.C.*, Washington, District of Columbia; Phillip Mannelly, Esq., *McDonald Carano LLP*, Reno, Nevada**

*For the Administrator, Wage and Hour Division:*
**Kate S. O'Scannlain, Esq., Jennifer S. Brand, Esq., Sarah K. Marcus, Esq., Jonathan T. Rees, Esq., Dean A Romhilt, Esq., *U.S. Department of Labor*, Washington, District of Columbia**

**Before:  James D. McGinley, *Chief Administrative Appeals Judge*, Thomas H. Burrell and Randel K. Johnson, *Administrative Appeals Judges***

2

## DECISION AND ORDER

PER CURIAM. This case arises under the Davis-Bacon Act, as amended (DBA or the Act).[1] Nevada Chapter of the Associated General Contractors of America, Inc., Associated Builders and Contractors, Nevada Chapter, and Nevada Trucking Association, Inc. (Petitioners) petition for review of the January 17, 2020 Response to Request for Review and Reconsideration and the June 26, 2020 Final Ruling from the Administrator of the Wage and Hour Division (Administrator)[2] affirming nine wage determinations for highway construction projects in several counties in Nevada.[3] For the reasons stated below, we find that the Administrator acted within the discretion afforded to her to determine prevailing wage rates under the DBA.

### BACKGROUND

### 1. Statutory and Regulatory Background

The DBA applies to every contract in excess of $2,000 to which the Federal Government or the District of Columbia is a party for construction, alteration, and/or repair of public buildings or public works in the United States.[4] The Act requires that the advertised specifications for construction contracts subject to the DBA contain a provision stating the minimum wages to be paid to the various

---

[1]    40 U.S.C. §§ 3141-3148 (2013); *see also* 29 C.F.R. Parts 1, 5, and 7 (2020).

[2]    Although we appreciate that the wage survey and wage determinations in this case resulted from the efforts of many individuals within the Wage and Hour Division and other offices of the Department of Labor, to simplify matters we will use the term "Administrator" to refer to all of these individuals, unless otherwise specified.

[3]    In the January 17, 2020 Response to Request for Review and Reconsideration, the Administrator affirmed Wage Determination Numbers NV20190002 (Elko County), NV20190004 (Eureka County), NV20190005 (Humboldt County), NV20190007 (Pershing County), NV20190008 (White Pine County), NV20190009 (Churchill, Lander, Lincoln, and Mineral Counties), NV20190010 (Douglas and Lyon Counties), NV20190011 (Carson City), and NV20190013 (Washoe and Storey Counties). In the June 26, 2020 Final Ruling, the Administrator reaffirmed Wage Determination Numbers NV20190011 (Carson City), and NV20190013 (Washoe and Storey Counties).

[4]    40 U.S.C. § 3142(a).

3

classifications of mechanics or laborers employed under the contract.[5] The minimum wage rates contained in the contracts derive from the rates the Administrator determines to be "prevailing" for each job classification in the geographic area where the work is to be performed.[6] The Administrator publishes these prevailing wage rates in wage determinations.[7]

The DBA's implementing regulations define "prevailing wage" as the wage paid to the majority of laborers or mechanics in the applicable job classifications on similar projects in the area where the work is to be performed.[8] The Administrator determines the prevailing rate for each job classification in each of four construction categories—residential, building, heavy, and highway.[9]

The DBA itself does not prescribe a method for determining prevailing wages, leading one court to observe that the statute "delegates to the Secretary, in the broadest terms imaginable, the authority to determine which wages are prevailing."[10] Indeed, "the substantive correctness of wage determinations is not subject to judicial review." Rather, courts limit review to "due process claims and claims of noncompliance with statutory directives or applicable regulations."[11]

In the absence of a statutory formula for determining prevailing wages, the DBA's implementing regulations charge the Administrator with "conduct[ing] a

---

[5]    *Id.*

[6]    *Id.* § 3142(b).

[7]    *See* 29 C.F.R. § 1.1(a).

[8]    *Id.* § 1.2(a)(1). "Majority" means more than 50 percent. In the event that the same wage is not paid to a majority of employees within a classification, the prevailing wage is the weighted average of the wages paid to workers in that classification. *Id.*

[9]    DAVIS-BACON CONSTRUCTION WAGE DETERMINATIONS MANUAL OF OPERATIONS (DBA MANUAL) 23 (1986), *available at* https://babel.hathitrust.org/cgi/pt?id=uiug. 30112104405474;view=1up;seq=3; *see also* 29 C.F.R. § 1.3(d) (identifying the four categories of construction).

[10]   *Building & Constr. Trades' Dep't, AFL-CIO v. Donovan*, 712 F.2d 611, 616 (D.C. Cir. 1983).

[11]   *Dep't of the Army*, ARB Nos. 1998-0120, -0121, -0122, slip op. at 25 (ARB Dec. 22, 1999) (internal citations and quotations omitted).

4

continuing program for the obtaining and compiling of wage rate information."[12] The Administrator ordinarily fulfills this obligation by conducting wage surveys.[13] The Administrator may seek data from many sources during a survey, including "contractors, contractors' associations, labor organizations, public officials and other interested parties . . . ."[14] The Administrator may consider statements showing wage rates paid on projects, signed collective bargaining agreements, wage rates determined for public construction by State and local officials under State and local prevailing wage legislation, data from contracting agencies, and "[a]ny other information pertinent to the determination of prevailing wage rates."[15]

The Administrator also has discretion to determine the relevant geographic area for the prevailing rate determination. The "area" for purposes of determining a prevailing rate might be the city, town, village, county, or other civil subdivision in which the work is to be performed.[16] The area will normally be the county of the particular project, unless sufficient data is not available for the county; at that point, the Administrator may expand the relevant area to surrounding counties or even use statewide data if lesser subdivisions do not yield sufficient data.[17] Furthermore, "[i]f there has not been sufficient similar construction in surrounding counties or in the State in the past year," wages from projects completed over a year prior to the survey period may be considered.[18] Significantly, neither the DBA nor its implementing regulations define what constitutes "sufficient" data. Although the Administrator has the discretion to expand the scope of the relevant geographic

---

[12]    29 C.F.R. § 1.3.

[13]    *See* DBA MANUAL at 43-68.

[14]    29 C.F.R. § 1.3(a).

[15]    *Id.* § 1.3(b).

[16]    *Id.* § 1.2(b).

[17]    *Id.* § 1.7(b); *Coalition for Chesapeake Housing Dev. (Chesapeake)*, ARB No. 2012-0010, slip op. at 6, 8 (ARB Sept. 25, 2013); *Road Sprinkler Fitters Local Union No. 669*, ARB No. 2010-0123, slip op. at 8 (ARB June 20, 2012).

[18]    29 C.F.R. § 1.7(c).

5

area to ensure sufficient data exists to determine a prevailing wage rate, the Administrator may not mix data from metropolitan counties with rural counties.[19]

## 2. Factual Background

In 2017, the Administrator conducted a wage survey to establish prevailing wage rates for highway projects in Nevada.[20] According to the Administrator,[21] as part of the survey process the Administrator contacted hundreds of interested parties, including the Nevada Office of the Labor Commissioner (NOLC) and the Nevada Department of Transportation (NDOT).[22]

The Administrator's contact with NOLC is significant to this case. The Administrator asserts that she invited NOLC to attend pre-survey briefings that were held in Nevada in April 2017 for interested parties to learn more about the survey process, including the method and deadline for submitting wage data.[23] Additionally, the Administrator asserts that representatives spoke with NOLC about the survey in July 2017 and followed up with a letter, dated July 17, 2017, which provided additional information about the survey.[24] The Administrator also gave NOLC power point slides that provided a detailed summary of the Nevada survey, including information on how, when, and where to submit wage data; summaries of relevant survey practices and procedures; information about how wage data collected during the survey would be used; and an explanation as to how prevailing rates would be determined if the Administrator could not collect

---

[19]     *Id.* § 1.7(b). The DBA Manual explains that if a county is located in an area designated by the Office of Management and Budget (OMB) as a Metropolitan Statistical Area (MSA), it will be classified as metropolitan for survey purposes. DBA MANUAL at 39.

[20]     Administrator's Response to Petition for Review (Adm'r Br.) at 8; Administrative Record (AR) at 73.

[21]     Petitioners do not dispute the Administrator's recitation of facts, including those related to contacts with NOLC.

[22]     Adm'r Br. at 17; *see also* AR at 65-69, 714.

[23]     Adm'r Br. at 9; AR at 714.

[24]     Adm'r Br. at 9; AR at 69-162, 714.

6

sufficient data for a particular locality.[25] The Administrator closed the survey on or about September 29, 2017.[26] NOLC did not attend the pre-survey briefings or submit wage data during the survey period.[27]

According to the Wage and Hour Division's (WHD) internal guidelines in effect at the time of the Nevada survey, the Administrator required wage data for at least six workers paid by at least three contractors (the 6/3 Rule) before she would deem a data set sufficient to calculate a prevailing rate for a particular locality.[28] If the survey data did not satisfy the 6/3 Rule at the county level, the Administrator progressively expanded the data set to predesignated "groups" and "super groups" of counties, and then to the entire state, until the 6/3 Rule had been satisfied.[29]

The Administrator issued wage determinations for localities across Nevada in or around November 2018.[30] In several instances, the data the Administrator received during the Nevada survey did not satisfy the 6/3 Rule at the county level. Accordingly, the Administrator considered data at the group, super group, and statewide levels to calculate the prevailing rates.[31]

## 3. Procedural History

By letters dated October 18, 2019, and April 24, 2020, Petitioner Nevada Chapter of the Associated General Contractors of America, Inc. (AGC) requested that the Administrator review and reconsider several of the Nevada wage determinations.[32] AGC raised various concerns with the wage determinations, but its primary concern was that certain prevailing wage rates were based, at least in

---

[25]     AR at 71-162, 714.

[26]     *Id.* at 73.

[27]     *Id.* at 714; Adm'r Br. at 9.

[28]     AR at 82, 673; DBA MANUAL at 62.

[29]     AR at 83, 673-74; *see id.* at 729. The Administrator only expands data sets to the super group and statewide levels for predesignated "key" classifications. AR at 83.

[30]     *Id.* at 182.

[31]     *Id.* at 675-703.

[32]     *Id.* at 603-61, 709-11.

7

part, on wage data from projects taking place outside of the pertinent geographic area.

In particular, AGC targeted the Administrator's method for setting rates for the dump truck driver classification in Carson City and Washoe and Storey Counties, which are metropolitan areas in northern Nevada. In each instance, the wage data the Administrator received during the survey period fell short of satisfying the 6/3 Rule at the county, group, and super group levels.[33] In accordance with WHD's established methodology, the Administrator therefore considered wage data from Clark County, which is the home of Las Vegas in southern Nevada and the only other metropolitan area in the state.[34] Using Clark County data, the Administrator ultimately determined the prevailing rate for dump truck drivers in the northern jurisdictions was $56.17 per hour, consisting of a base rate of $29.45 with an additional $26.72 per hour in fringe benefits.[35]

In its petitions to the Administrator, AGC argued that the Administrator erred by relying on data from distant Clark County to calculate the prevailing rates for Carson City and Washoe and Storey Counties. AGC argued that the Administrator should have relied exclusively on county-level data or, at most, data from surrounding counties. According to AGC, Clark County was not only too distant from the northern jurisdictions to be considered, but also had significantly higher rates set by collective bargaining that inflated the Administrator's calculations. In support of its position, AGC compared the Administrator's prevailing rate determinations for Carson City and Washoe and Storey Counties with the rates calculated by NOLC under the Nevada state prevailing wage laws. AGC maintained that the Administrator erred by failing to consider NOLC's wage rates when preparing the prevailing rate determinations and by failing to explain or

---

[33]     Adm'r Br. at 28-30. There are no other localities within Carson City's group. Washoe and Storey Counties comprise one group. Carson City and Washoe and Storey Counties comprise one super group. AR at 729. Although WHD received data for several dump truck drivers in Carson City and Washoe County, each worker was employed by the same contractor. Adm'r Br. at 28-29.

[34]     *Id.* at 28-30.

[35]     AR at 50, 57.

8

account for the discrepancy between the Administrator's rates and the rates determined to be prevailing by NOLC for the same classification under state law.

NOLC supported AGC's petitions.[36] Like AGC, NOLC argued that Clark County data inflated the Administrator's calculations for Carson City and Washoe and Storey Counties. NOLC supplied the results of its own wage surveys performed under state law from 2016 to 2019, which showed that its rates for the dump truck driver classification had not exceeded $31.22 per hour in the northern metropolitan areas. NOLC and AGC requested that the Administrator adopt NOLC's wage rates, at least until the Administrator's rates could be reassessed.

In ruling letters issued on January 17, 2020, and June 26, 2020, the Administrator denied AGC's requests for review and reconsideration.[37] The Administrator responded to each point of error asserted by AGC and explained the method used to calculate prevailing rates based on the data the Administrator received during the survey period, including the process for expanding the scope of the data sets where data at the county level was not sufficient to determine a prevailing wage rate. The Administrator also stated that she did not consider NOLC's wage determinations because NOLC did not submit its information during the survey period. The Administrator also explained that NOLC's information could not be used because NOLC's rates did not distinguish between basic and fringe benefit rates and were not based exclusively on data for highway projects.

On July 27, 2020, Petitioners appealed the Administrator's determinations to the Administrative Review Board (ARB or the Board).

---

[36]     *Id.* at 164-79, 663-68, 706-07.
[37]     *Id.* at 670-704, 713-24.

9

## JURISDICTION AND STANDARD OF REVIEW

The ARB has jurisdiction to decide appeals from the Administrator's final decisions concerning DBA wage determinations.[38] DBA proceedings before the ARB are appellate in nature.[39] We assess the Administrator's rulings to determine whether they are consistent with the DBA and its implementing regulations and are a reasonable exercise of the discretion delegated to the Administrator to implement and enforce the Act.[40] In matters requiring the Administrator's discretion, the Board generally defers to the Administrator as being "in the best position to interpret [the DBA's implementing regulations] in the first instance . . . and absent an interpretation that is unreasonable in some sense or that exhibits an unexplained departure from past determinations, the Board is reluctant to set the Administrator's interpretation aside."[41]

## DISCUSSION

Petitioners basically raise two points of error in their appeal. First, Petitioners argue that the Administrator failed to properly investigate whether NOLC possessed relevant wage information during the Nevada wage survey. Second, Petitioners argue that the Administrator erred by relying on statewide wage data to determine prevailing wage rates for certain localities. For the reasons that follow, we reject both arguments.

## 1. The Administrator Acted Reasonably in Her Efforts to Encourage NOLC to Participate in the Wage Survey

---

[38]    Secretary's Order No. 01-2020 (Delegation of Authority and Assignment of Responsibility to the Administrative Review Board (Secretary's discretionary review of ARB decisions)), 85 Fed. Reg. 13186 (Mar. 6, 2020)

[39]    29 C.F.R. § 7.1(e).

[40]    *Chesapeake*, ARB No. 2012-0010, slip op. at 4-5 (citing *Y-12 Nat'l Sec. Complex*, ARB No. 2011-0083, slip op. at 5 (Aug. 8, 2013)).

[41]    *Titan IV Mobile Serv. Tower*, No. 1989-0014, slip op. at 7 (WAB May 10, 1991); *see also Road Sprinkler*, ARB No. 2010-0123, slip op. at 6.

10

It is undisputed that despite multiple instances of contact between the Administrator and NOLC during the survey period, and despite the Administrator's invitation to NOLC to supply any relevant wage data in its possession, NOLC elected not to respond to requests for participation during the Administrator's survey. Nevertheless, Petitioners contend that the Administrator erred by closing the wage survey and calculating prevailing wage rates without first collecting NOLC's wage information. According to Petitioners, the Administrator was obligated to take additional steps to engage NOLC when it did not respond, and unreasonably failed to locate the state wage determinations NOLC published on its website. Nevertheless, we find that the Administrator acted reasonably in her efforts to encourage NOLC to participate in the Nevada wage survey.

The DBA's implementing regulations give the Administrator significant discretion in conducting wage surveys. While the regulations direct the Administrator to "encourage the voluntary submission of wage data" from interested parties, including public officials like NOLC, the regulations do not require interested parties to respond, grant the Administrator the power to compel interested parties to participate, or dictate precisely how the Administrator must go about engaging interested parties or encouraging their participation.[42] Likewise, the regulations ultimately leave it to the Administrator's discretion to decide what information to seek and consider in wage surveys.[43]

Given the latitude afforded to the Administrator by the regulations, we conclude that the Administrator reasonably exercised the broad discretion granted to her with respect to her efforts to "encourage" NOLC to participate in the Nevada wage survey. Petitioners do not dispute that the Administrator invited NOLC to attend pre-hearing briefings, invited NOLC to participate in the survey, and supplied detailed information to NOLC about the survey, including how and by when to supply wage information. The Administrator also notified NOLC of the consequences if NOLC or other interested parties chose not to participate in the

---

[42]     *See* 29 C.F.R. § 1.3(a).

[43]     *See id.* § 1.3(b) (stating that the Administrator "may" consider several types of information, including wage statements, collective bargaining agreements, and "[w]age rates determined for public construction by State and local officials . . . .").

11

survey. Specifically, the materials the Administrator supplied to NOLC stated that if NOLC did not respond by the survey deadline, the Administrator would not consider its wage data. Likewise, the materials stated that if the Administrator did not receive sufficient wage data during the survey period for a particular locality, she could draw data from other localities to calculate a prevailing rate.[44] We find that these multiple contacts with NOLC were sufficient to satisfy the Administrator's obligation to "encourage" NOLC to participate in the survey.[45]

However, Petitioners contend that NOLC was not an ordinary interested party. According to Petitioners, the Administrator had a greater responsibility to "investigate [NOLC] more thoroughly prior to determining that there was insufficient data available in Carson City and Washoe and Storey Counties" because NOLC "is a public repository of wage data."[46] We disagree. The Administrator has no greater obligation to attempt to engage NOLC than any other interested party.[47] Public officials like NOLC are one of several categories of interested parties listed in sequence in the regulations as those the Administrator must encourage to participate in a wage survey. The regulations do not differentiate or elevate public officials from any other interested party or potential source of wage data.

We also disagree with Petitioners that the Administrator erred by failing to locate NOLC's publicly posted wage determinations. Although NOLC publishes its state wage rate determinations on its website, we find no basis to conclude that the Administrator knew, or should have known, that the rates were available online. We also disagree with Petitioners that the Administrator should be faulted for failing to locate the determinations in the circumstances of this case, particularly

---

[44]      AR at 77, 81-83.

[45]      *See* 29 C.F.R. § 1.3(a).

[46]      Petition for Review of a Final Ruling of the Wage and Hour Administrator at 7.

[47]      The only enhanced burden the regulations place on the Administrator to engage an interested party, as relevant to this case, concerns the Administrator's obligation to consult "the highway department of the State in which a project in the Federal-Aid highway system is to be performed . . . ." 29 C.F.R. § 1.3(b)(4). The Administrator consulted with the Nevada Department of Transportation (NDOT) and NDOT participated in the survey by providing wage data. Adm'r Br. at 8-9.

where NOLC failed to alert the Administrator to the existence of the published wage determinations in response to the Administrator's request for information.[48]

Although Petitioner's proffer that the Administrator could have done more to encourage NOLC to participate in the survey and could have taken additional steps to locate and secure NOLC's wage determinations, the Board's province is only to assess whether the Administrator's rulings were consistent with the DBA and its implementing regulations and reflect a reasonable exercise of the discretion delegated to the Administrator to implement and enforce the Act.[49] We find that the steps the Administrator took to encourage NOLC to participate in the wage survey were reasonable in the circumstances of this case and consistent with the discretion afforded to the Administrator to conduct surveys under the DBA.

## 2. The Administrator Reasonably Exercised Her Discretion When She Used Statewide Data to Calculate Prevailing Rates

In a series of related arguments, Petitioners also challenge the Administrator's use of statewide wage data to set prevailing wage rates for certain classifications and localities. In particular, Petitioners focus on the Administrator's decision to use wage data from Clark County to set prevailing wage rates for dump truck drivers in Carson City and Washoe and Storey Counties. We conclude that the Administrator exercised reasonable discretion when she used statewide data to calculate prevailing rates in this case.

A. *The Administrator Has the Discretion to Consider Statewide Wage Data in Appropriate Circumstances*

---

[48]    While not determinative, there is no indication in the record that NOLC provided any explanation with regard to its decision or failure to not respond, such as some type of extreme exigency.

[49]    *Chesapeake*, ARB No. 2012-0010, slip op. at 4-5.

Petitioners argue that, as a matter of law, the Administrator does not possess the authority to consider data from geographically distant locations to set prevailing wage rates. Rather, according to Petitioners, the regulations allow the Administrator to only go so far as to consider data from "surrounding counties" if data at the county level is insufficient.[50] We disagree with Petitioners based on our holding in *Coalition for Chesapeake Housing Development*, in which the Board confirmed that the Administrator possesses the authority and discretion to use group, super group, or even statewide data to determine prevailing wage rates in appropriate circumstances.[51]

In *Chesapeake*, the Administrator's survey for residential construction projects in Virginia failed to return data for certain job classifications in Newport News and Chesapeake, two metropolitan areas in the southeastern corner of the state.[52] Accordingly, the Administrator considered data from the other MSAs in the applicable super group, including Fairfax and Alexandria, which are more than 150 miles away in northern Virginia.[53] The wage data from this super group represented all of the data submitted for metropolitan counties in the state.[54]

The Board held in *Chesapeake* that the Administrator may, in her reasonable discretion, utilize statewide wage data when she determines that data from lesser subdivisions are insufficient to determine a prevailing wage rate. As the Board stated, the DBA "does not dictate a particular methodology to be used by the Secretary or his designee, the Administrator, when determining the prevailing wage rate. There is nothing in the regulations that prohibits the Administrator from using the total data in a county, a metropolitan statistical area, super groups of counties, or even statewide data to determine, in particular cases, what might yield 'sufficient' data."[55] In fact, the Board recognized that the regulations contemplate

---

[50]     Petitioner's Reply to Opposition to Petition for Review (Reply) at 6-8.
[51]     *Chesapeake*, ARB No. 2012-0010, slip op. at 8.
[52]     *Id.* at 2.
[53]     *Id.* at 3.
[54]     *Id.* at 7.
[55]     *Id.* at 9 (internal citations omitted).

14

and put the public on notice that statewide data may be used to determine prevailing wage rates.[56]

We adhere to our holding in *Chesapeake*. The broad discretion granted to the Administrator to conduct surveys and determine when wage data is sufficient to set a prevailing wage rate empowers her to consider group, super group, or even statewide data in appropriate circumstances. We reject Petitioners' interpretation of the regulations and the powers granted to the Administrator, and decline Petitioners' request to overturn *Chesapeake*.

### B. *The Administrator Reasonably Exercised Her Discretion by Using Statewide Data, Even After NOLC Belatedly Supplied Its State Wage Determinations*

Petitioners next argue that even if the Administrator possessed the authority to consider remote or statewide data in certain circumstances, it was not reasonable for the Administrator to do so in this case. Petitioners specifically present two related, but distinct arguments. First, Petitioners contend that NOLC's wage determinations provided sufficient wage information at the county level such that it was inappropriate for the Administrator to resort to using wage data from distant labor markets. Second, Petitioners contend that the Administrator failed to account for or explain the disparity between rates in northern and southern Nevada, as reflected in NOLC's wage determinations, when she relied on wage data from Clark County to set the prevailing rates in Carson City and Washoe and Storey Counties. We reject both arguments.

### i. *The Administrator Exercised Reasonable Discretion in Declining to Use NOLC's Wage Determinations*

In contrast to the circumstance in *Chesapeake* where it was undisputed that county level wage data was not available, Petitioners contend that NOLC's wage determinations provided sufficient county level information to allow the Administrator to set prevailing wage rates for Carson City and Washoe and Storey Counties in this case. We find that the Administrator reasonably exercised her

---

[56]      *Id.* at 8 (citing 29 C.F.R. § 1.7(c)).

15

discretion in declining to use NOLC's wage determinations to set prevailing wage rates.

The Administrator offers two justifications for refusing to use NOLC's wage determinations. First, the Administrator declined to consider NOLC's wage information because it was submitted after the survey deadline. The record reflects that NOLC first submitted information regarding its wage determinations for the dump truck driver classification in Washoe County in May 2019, twenty months after the Nevada wage survey closed and six months after the Administrator issued the wage determinations.[57] NOLC then took another five months to supply information about its wage determinations for Carson City and Storey Counties.[58] As discussed above, NOLC was encouraged to submit its wage information before the survey deadline. It chose not to do so, and only supplied its information after the Administrator issued wage determinations with which it did not agree.

The Administrator's decision to decline to consider NOLC's belated information is consistent with WHD's established policies and practices and Board precedent. The DBA Manual instructs that the Administrator will not consider data submitted after a survey deadline.[59] During the survey period, the Administrator also notified NOLC of the deadline to supply information and made NOLC aware that data submitted after that deadline would not be considered.[60] The Board and its predecessor, the Wage Appeals Board (WAB), have affirmed that the Administrator may reject data submitted after the survey deadline.[61] As the WAB stated, "to permit the reopening of a survey to include information submitted after

---

[57]   AR at 164-76.

[58]   *Id.* at 663-68.

[59]   DBA MANUAL at 56.

[60]   AR at 73, 77.

[61]   *Int'l Union of Bricklayers & Allied Craft Workers, Local Union No. 1*, ARB No. 2011-0007, slip op. at 7 (ARB Apr. 27, 2012); *Int'l Ass'n of Heat & Frost Insulators & Asbestos Workers, Local 28*, No. 1991-0019, slip op. at 5 (WAB July 30, 1991). Petitioners attempt to distinguish these cases on the grounds that the late-submitted data came from private parties, rather than from a public office as in this case. For the reasons set forth in Section 1, we find no basis to elevate or distinguish NOLC's wage information from the information that may be supplied by private or other interested parties.

the cutoff date would mean that no survey was ever truly complete."[62] The Administrator may reasonably reject untimely data based on the obvious need for finality, and the dangers that could result from perpetually being forced to reopen surveys when parties belatedly present information when they are dissatisfied with the initial results.

Additionally, the Administrator states that she did not consider NOLC's information because it was not useable in the form in which it was submitted. For example, the Administrator states that NOLC's wage determinations did not separately list or distinguish between a basic hourly rate and a fringe benefit rate in accordance with the manner in which the Administrator publishes rates under the DBA.[63] The Administrator also states that NOLC's wage determinations reflected a single determination covering all four categories of construction—highway, residential, building, and heavy. As a result, the Administrator contends she could not rely on NOLC's determinations to set prevailing wage rates specifically for highway projects.[64]

Finally, the Administrator submits that NOLC made its determinations pursuant to state law and in accordance with the state's own survey and wage determination policies and practices. Other than the observation that the rates were calculated pursuant to state statutes and regulations, neither Petitioners nor NOLC offered NOLC's methodology or rules for surveying or calculating prevailing wage rates.[65]

Although Petitioners quarrel with the Administrator's criticisms of NOLC's wage determinations, Petitioners' arguments do not persuade us that the

---

[62]    *Heat & Frost Insulators*, No. 1991-0019, slip op. at 5.

[63]    *See* AR at 1-60.

[64]    *See* 29 C.F.R. § 1.3(a) (stating that information submitted during a wage survey should "reflect not only the wage rates paid a particular classification in an area, but also the type or types of construction on which such rate or rates are paid . . . .").

[65]    *See* AR at 706-07. The manner in which NOLC determines prevailing wage rates appears to be materially different from the manner in which the Administrator determines prevailing wage rates under the DBA. Additionally, it does not appear from the record that NOLC ever made the Administrator aware of how many contractors or workers contributed to its determinations or from what geographic area NOLC pulled its data for each locality.

17

Administrator's decision to eschew NOLC's untimely wage information was an unreasonable exercise or abuse of the discretion granted to her by the DBA's implementing regulations. As we have stated, the Administrator has substantial discretion to determine survey and wage data collection methods, determine what type of information to consider, determine what constitutes sufficient wage data, and determine a prevailing wage rate. We appreciate Petitioners' argument that the Administrator may have been able to find value in NOLC's wage information or that the issues articulated by the Administrator may have been curable. However, the Administrator has articulated a reasonable basis for her judgment that the information as submitted was not sufficiently useable or probative so as to override the Administrator's firm policy that information supplied after the survey deadline will not be considered.

*ii. The Administrator Did Not Act Unreasonably, Even in Light of the Disparities Evidenced by NOLC's Wage Determinations*

Notwithstanding the foregoing, Petitioners also assert that even if the Administrator determined that NOLC's wage determinations could not be used to set prevailing wage rates based exclusively on data at the county or local level, the determinations at least demonstrated that the Administrator's decision to rely on data from distant Clark County to calculate the rates for dump truck drivers in Carson City and Washoe and Storey Counties was an abuse of discretion. Petitioners contend that the Administrator could not reasonably justify her decision to use Clark County data because, according to NOLC's wage determinations, wages were 80 to 100% higher there than in the northern jurisdictions. Similarly, Petitioners contend that NOLC's wage determinations revealed that the Administrator's determinations did not accurately reflect prevailing rates, because the Administrator's rates for the northern jurisdictions were nearly double those determined to be prevailing by NOLC for the same areas.

In support of their position, Petitioners cite the Board's decision in *New Mexico National Electrical Contractors Association.*[66] In that case, the Administrator, relying on limited and distorted data, published a prevailing wage

---

[66]    ARB No. 2003-0020 (ARB May 28, 2004).

rate for electricians in Eddy County, New Mexico that was 48% lower than the previous rates set by the Administrator.[67] The Board remanded the case to the Administrator in part because she never acknowledged, discussed, or attempted to explain the marked change between the prevailing wage rate determinations.[68] Petitioners argue that the Administrator similarly abused her discretion in this case by failing to account for or explain the difference in wage rates paid to dump truck drivers in northern and southern Nevada, and the disparity between the rates determined to be prevailing by the Administrator and by NOLC for that classification.

The circumstances here are materially different than those presented in *New Mexico,* and do not persuade us that the Administrator unreasonably exercised her discretion by relying on statewide wage data in this case. In *New Mexico*, the disparity the Administrator failed to explain or account for existed between her own wage determinations from one iteration to the next. Here, in contrast, the disparity existed between the Administrator's determinations and the determinations of NOLC, a state body which determined prevailing wage rates pursuant to its own state laws and pursuant to a methodology and set of rules that neither NOLC nor Petitioners have described to, or made part of the record before, the Board.

Furthermore, in *New Mexico* we faulted the Administrator for merely "attest[ing], in general terms, to the survey's sufficiency" and failing to elaborate on the basis for her judgments.[69] Here, in contrast, the Administrator offered a reasonable explanation, consistent with the deference afforded to her by the DBA's implementing regulations, for how the Administrator determined the prevailing rates and why NOLC's wage information did not alter the Administrator's

---

[67]    *Id.* at 3, 5. The Administrator set prevailing rates based on data from just three contractors. The majority of the data came from one contractor that imported workers from out of state. *Id.* at 3.

[68]    *Id.* at 7.

[69]    *Id.* at 7-8. The Administrator's explanation was: "This survey was conducted and reviewed in accordance with longstanding guidelines, practices, and procedures. . . . A survey is considered acceptable when established time frames, construction types, geographic areas, classes, area practices, and accepted procedures for data adequacy, data computation, and survey notification are properly observed." *Id.* at 8 n.7.

determinations. As already discussed, the Administrator reasonably declined to consider NOLC's wage determinations because they were submitted well beyond the survey deadline and long after the wage determinations had already been issued, and because they did not align with the Administrator's parameters for setting and publishing prevailing wage rates.

This is not to say that the Administrator could not have decided to reopen the wage survey or reexamine its wage determinations in light of the information supplied by NOLC. However, we cannot say that the Administrator's failure to do so in the circumstances of this case were so unreasonable as to override the broad discretion afforded to her by the regulations.[70]

C. *The Administrator Reasonably Exercised her Discretion in Determining that the Wage Data Received During the Survey Period was not Sufficient to Set a Prevailing Wage Rate at the County Level.*

Finally, Petitioners argue in their Reply that, even setting aside NOLC's wage determinations, the Administrator received sufficient data during the survey period to establish prevailing wage rates based on county level data for some classifications and localities. We reject this argument as well.

Once again, Petitioners target the Administrator's determinations for dump truck drivers in Carson City and Washoe and Storey Counties. The Administrator reported that during the survey period, she received wage data for 63 dump truck drivers in Carson City and 72 dump truck drivers in Washoe County. However, all of the drivers worked for a single contractor.[71] As set forth above, at the time of the Nevada wage survey, WHD's policies dictated that the Administrator had to have wage information for at least six workers paid by at least three contractors before she would determine a prevailing wage rate. Therefore, even though the

---

[70]     *See Chesapeake*, ARB No. 2012-0010, slip op. at 9 ("[Petitioner's] argument about [the disparity in rates between different] 'labor markets' delves into the area where we would defer to the Administrator's methodology."), 10 ("The regulations do not prohibit grouping to ascertain a prevailing wage simply because of higher income or pay in one or more of the associated counties.").

[71]     Adm'r Br. at 28-30 (citing AR at 739-42).

20

Administrator received enough data in some of the northern Nevada jurisdictions to satisfy the six-worker portion of the 6/3 Rule, the Administrator did not consider the data set sufficient because she lacked information from at least three different contractors.[72] In accordance with the 6/3 Rule and her established practices, the Administrator therefore moved to the group, super group, and statewide levels to secure information from enough contractors to set a prevailing wage rate.[73]

Petitioners contend that strict adherence to the 6/3 Rule was unreasonable, given the size of the data set available to the Administrator at the county, group, or super group levels. We do not agree. The Administrator maintains reasonable discretion to decide when data is "sufficient," a term that is not defined by the regulations. The Administrator submits that she was required to look beyond the borders of Carson City and Washoe and Storey Counties in accordance with the 6/3 Rule to ensure that the data set was diverse enough to properly set a prevailing rate for the classification.[74] Rather than setting a prevailing wage rate based exclusively on the wages paid by a single contractor, the Administrator expanded the scope of the data set to the statewide level, which she was authorized to do by regulation. This is the type of reasonable, discretionary judgment that is reserved for the Administrator, and which we will not upset on appeal.

Petitioners also argue that for some other classifications and localities, the Administrator improperly relied on data at the group, super group, or statewide level despite having received sufficient wage data at the county level to satisfy the 6/3 Rule.[75] Petitioners referred generally to nearly 300 pages of payroll records reflecting wage data for numerous classifications across multiple counties, without elaborating or pointing to the specific portions of those records that they believe support their claims.[76] For example, although Petitioners claim that three

---

[72]     *Id.* at 28-30 (citing AR at 81-82; DBA MANUAL at 62).

[73]     *Id.* at 28-30.

[74]     *Id.* at 36-37 n.12.

[75]     Specifically, Petitioners contend that the 6/3 Rule was satisfied for dump truck drivers in Washoe County, dump truck drivers in Humboldt County, laborers in the jackhammer classification in Elko County, and power equipment operators in the roller classification in Elko County. Reply at 5-6.

[76]     Reply at 5-6.

21

contractors reported wage data for dump truck drivers in Washoe County, Petitioners failed to identify who those contractors were, and did not cite to the specific pages in the payroll records in which wage information for those contractors appeared. Petitioners also failed to make these arguments in their initial brief, instead reserving them for their Reply. Accordingly, we reject Petitioners' arguments with respect to these classifications and localities.[77]

### 3. We Reject Any Other Challenges Petitioners Made to the Nevada Wage Determinations

As the foregoing discussion reflects, essentially all of Petitioners' arguments on appeal concern the Administrator's prevailing wage rate determinations for the dump truck driver classification in Carson City and Washoe and Storey Counties. However, in Petitioner AGC's October 18, 2019 requests for review and reconsideration to the Administrator, AGC also challenged the Administrator's determinations with respect to other classifications and other localities.[78] Some of AGC's arguments were similar to those presented in this appeal—that the Administrator erred by relying on group, super group, or statewide data to set prevailing wage rates. Others, though, are significantly different and concern issues such as the Administrator allegedly issuing multiple rates for a single classification or using metropolitan data to set rates in rural counties.[79] Petitioners ask the Board to resolve each of the arguments and issues it presented to the Administrator below, even if not specifically argued in their appellate briefs.[80]

---

[77]   *Adm'r, Wage & Hour Div. v. XCEL Sol. Corp.*, ARB No. 2012-0076, 2011-LCA-00016, slip op at 11 n.51 (ARB July 16, 2014) (rejecting argument raised for first time in rebuttal brief).

[78]   *Id.* at 603-61.

[79]   *E.g., id.* at 603-04.

[80]   Although Petitioners appear to ask the Board to resolve each of the issues presented below, Petitioners nevertheless also appear to limit the scope of their appeal to the wage determinations for Carson City and Washoe and Storey Counties. Reply at 16 (asking the Board to reject the Administrator's waiver arguments and "find that each of the WHD's wage determinations which incorporate wage rates from Clark County into the distant northern counties of Nevada are arbitrary and capricious and contrary to the law . . . .").

22

We summarily reject Petitioners' petition with respect to any issue other than the Administrator's decision to rely on group, super group, or statewide wage data to set prevailing wage rates. In its January 17, 2020, 35-page ruling letter, the Administrator thoroughly responded to each point of error asserted by Petitioner AGC in its requests for review and reconsideration.[81] On appeal, Petitioners have not identified any particular error in the Administrator's explanation or judgment or any basis for the Board to overrule the Administrator in light of the Administrator's response, except with respect to the specific issue of the Administrator's reliance on group, super group, or statewide data.[82]

Regarding the issue of the Administrator's reliance on group, super group, or statewide data for classifications and localities other than dump truck drivers in Carson City and Washoe and Storey Counties, we rule in the Administrator's favor for all of the same reasons discussed in Sections 1 and 2 above.

## CONCLUSION

For the foregoing reasons, we **DENY** Petitioner's Petition for Review.

**SO ORDERED.**

---

[81]     AR at 670-704.

[82]     *See* 29 C.F.R. § 7.5(a) ("A petition for review of a wage determination shall . . . contain a short and plain statement of the grounds for review [and] be accompanied by supporting data, views, or arguments."); *see also Griebel v. Union Pac. R.R. Co.*, ARB No. 2013-0038, ALJ No. 2011-FRS-00011, slip op. at 2 n.1 (ARB Mar. 18, 2014) (quoting *Tolbert v. Queens Coll.*, 242 F.3d 58, 75-76 (2d Cir. 2001) (stating that it is a "settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.")); *Walker v. Am. Airlines*, ARB No. 2005-0028, ALJ No. 2003-AIR-00017, slip op. at 17 (ARB Mar. 30, 2007) (rejecting argument about which complainant made only "passing references and commentary" on appeal); *Adm'r, Wage & Hour Div., U.S. Dep't of Labor v. Am. Truss*, ARB No. 2005-0032, ALJ No. 2004-LCA-00012, slip op. at 2 n.1 (ARB Feb. 28, 2007) (declining to consider arguments made below that were purportedly incorporated by reference into the appeal).