UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| NEVADA CHAPTER OF THE ASSOCIATED GENERAL CONTRACTORS OF AMERICA, INC., *et al.*, <br><br> Plaintiffs, <br> v. <br> MARTY WALSH, Secretary of the United States Department of Labor, <br><br> Defendant. | Case No. 3:21-cv-00430-MMD-CLB <br><br> ORDER |

**I.     SUMMARY**

Plaintiffs the Nevada Chapter of the Associated General Contractors of America, Inc. ("AGC"), Associated Builders and Contractors Nevada Chapter, and the Nevada Trucking Association (together, "Plaintiffs") bring this action against Defendant Marty Walsh, in his official capacity as Secretary of the United States Department of Labor. Plaintiffs seek judicial review of the Administrative Review Board's ("ARB" or the "Board") decision to affirm a series of determinations by the Administrator (the "Administrator") of the Wage and Hour Division of the United States Department of Labor (the "Department") in ARB Case No. 2020-0058.[1] (ECF No. 23.) Before the Court are Plaintiffs' motion for summary judgment and Defendant's motion to dismiss, and in the alternative, cross-motion for summary judgment. (ECF Nos. 18, 20.)[2] Because Defendant did not violate

---

[1] The parties stipulated that the claim raised in this action is appropriately adjudicated by the Court through cross summary-judgment motions and Defendant's administrative record. (ECF No. 14.) A certified administrative record was provided to the Court. (ECF Nos. 16, 16-1 – 16-4.)

[2] The parties filed corresponding responses and replies. (ECF Nos. 22, 25, 26, 29.)

the Davis-Bacon Act ("DBA"), 40 U.S.C. § 3142(b), nor did he violate the Department's regulations, 29 C.F.R. Part 1., and as further discussed below, the Court will grant summary judgment in favor of Defendant.

**II.     BACKGROUND**

The following facts are undisputed. Plaintiffs are three Nevada trade associations representing construction contractors, transportation companies, and related firms throughout Nevada. (ECF No. 23 at 2.) Plaintiffs' representation includes construction and transportation companies performing work in subdivisions in northern Nevada covered by the DBA, 40 U.S.C. § 3141 *et seq.* (*Id.*) The DBA applies to contracts in excess of $2,000 to which the Federal Government or the District of Columbia is a party "for construction, alteration and/or repair of public buildings or public works in the United States." (ECF No. 16-2 at 2 (citing 40 U.S.C. §§ 3141-2148).)

**A.     Wage Survey**

In 2017, the Administrator conducted a wage survey to establish the prevailing wage rates for highway projects in Nevada. (*Id.* at 5.) As part of the process, the Administrator contacted interested parties, and among the parties contacted was the Nevada Office of the Labor Commissioner ("NOLC"). (*Id.*) NOLC was invited to attend pre-survey briefings being held to learn about the survey process. (*Id.*) Additionally, NOLC was provided additional information and given PowerPoint slides with a summary of the Nevada survey. (*Id.*) This included the method and deadline to submit wage data and an explanation regarding how prevailing rates were to be determined if the Administrator could not collect sufficient data for a locality. (*Id.*) On or about September 29, 2017, the survey closed with NOLC not having attended the pre-survey briefings or submitting any wage data during the survey period. (*Id.* at 6.)

Over a year later, the Administrator issued wage determinations for localities across Nevada. (*Id.*) In instances where the Administrator was unable to satisfy its internal rules regarding the sufficiency of prevailing wage rates for a particular locality, the Administrator expanded use of data sets to predesignated "groups" and "super groups"

of counties, and would proceed to the entire state until its internal rules were satisfied. (*Id.*)

### B.     Review and Reconsideration

In response to the Administrator's wage determinations, in October 2019 and April 2020, AGC requested the Administrator review and reconsider several wage determinations. (*Id.*) AGC raised various concerns including its concern that the prevailing wage rates were, in part, based on wage data from projects outside the relevant geographic area. (*Id.* at 6-7.) AGC insisted that the Administrator erred because data from Clark County was used to calculate the prevailing wage rages for three northern Nevada counties: Carson City, Washoe, and Storey (the "Counties"). (*Id.* at 7.) NOLC supported AGC's requests and provided NOLC's own wage surveys performed under state law from 2016 to 2019. (*Id.* at 8.) Both organizations requested the Administrator adopt NOLC's wage rates, or at least until the Administrator's wage determinations could be reassessed. (*Id.*)

In January and June of 2020, the Administrator issued ruling letters denying AGC's request for review and reconsideration. (*Id.*) The Administrator stated that she did not consider NOLC's wage surveys because it was not submitted during the Nevada survey period. (*Id.*) Moreover, NOLC's survey information were unusable because the rates it provided did not distinguish between basic and fringe benefit rates, and the rates did not pertain solely to data for highway projects. (*Id.*)

### C.     Appeal

AGC (joined by the other two Plaintiffs) subsequently appealed the Administrator's denial to the Board in ARB Case No. 2020-0058. (*Id.*) The Board has jurisdiction to decide appeals of the Administrator's final decisions concerning wage determinations covered by the DBA. (*Id.*) According to the Board, Plaintiff's raised "two points of error in their appeal." (*Id.* at 9.) The first being that the Administrator failed to properly investigate whether NOLC possessed relevant wage information at the time of the Nevada wage survey, and the second being that the Administrator erred in relying on statewide wage

3

data when determining prevailing wage rates for certain counties in northern Nevada. (*Id.*) The Board ultimately denied Plaintiffs' appeal. (*Id.* at 1-22 (the "Decision").)

### D. Judicial Review

Plaintiffs seek judicial review of the Board's Decision denying their appeal under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.* (ECF No. 23 at 4.) Plaintiffs allege that the Decision affirming the Administrator's wage determinations was "arbitrary and capricious" in violation of the DBA and the Department's published regulations, 29 C.F.R. Part 1. (*Id.* at 9-10.) Moreover, Plaintiffs allege the Decision violated the DBA and the APA because the Administrator was required to consider the available public data maintained by the NOLC. (*Id.*)

Plaintiffs subsequently move for summary judgment. (EFC No. 18.) In response, Defendant filed a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), and in the alternative, for summary judgment.[3] (ECF No. 20.) Defendant challenges Plaintiffs' standing. (*Id.* at 15-21.)

## III. LEGAL STANDARD

### A. Subject Matter Jurisdiction

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows defendants to seek dismissal of a claim or action for a lack of subject matter jurisdiction. Although the defendant is the moving party in a motion to dismiss brought under Rule 12(b)(1), the plaintiff is the party invoking the court's jurisdiction. As a result, the plaintiff bears the burden of proving that the case is properly in federal court. *See McCauley v. Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001) (citing *McNutt v. Gen. Motors Acceptance Corp.*,

---

[3]The Court notes that Plaintiffs filed their amended complaint after Defendant filed their motion seeking dismissal, and in the alternative, summary judgment. (ECF No. 23.) Plaintiffs state that they did so out of an abundance of caution in order to "plead standing with greater specificity" and "render moot [Defendant's] objections to the original complaint." (ECF No. 26 at 6.) Defendant reiterates his standing arguments with respect to the amended complaint in his reply (ECF No. 29 at 9-16), and as such, the Court will address below the standing arguments as articulated in the reply rather than in the original motion.

4

298 U.S. 178, 189 (1936)). The plaintiff's burden is subject to a preponderance of the evidence standard. *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

Federal courts are courts of limited jurisdiction. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears. *See Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989) (citation omitted). "Because subject matter jurisdiction goes to the power of the court to hear a case, it is a threshold issue and may be raised at any time and by any party." *Mallard Auto. Grp., Ltd. v. United States*, 343 F. Supp. 2d 949, 952 (D. Nev. 2004) (citing Fed. R. Civ. P. 12(b)(1)).

### B.     Summary Judgment

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. United States Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving

///

party. *See Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986) (citation omitted).

The moving party bears the burden of showing that there are no genuine issues of material fact. *See Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies the requirements of Rule 56 of the Federal Rules of Civil Procedure, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient[.]" *Anderson*, 477 U.S. at 252.

Moreover, "when parties submit cross-motions for summary judgment, '[e]ach motion must be considered on its own merits.'" *Fair Hous. Council. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citations omitted) (quoting William W. Schwarzer, *et al.*, *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 499 (Feb. 1992)). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Id.*

### III. DISCUSSION

Because Defendant's motion to dismiss is premised on Plaintiffs' standing, as an initial matter, the Court will address Defendant's two standing arguments first and will then deny the motion to dismiss. The Court will then turn to address the parties' cross-motions for summary judgment. Because both parties dispute whether the DBA and the Department's regulations weigh in their favor, the Court will address the parties'

///

///

arguments on these two issues in turn and will conclude with granting summary judgment in favor of Defendant.[4]

### A. Standing

#### 1. Waiver

Defendant argues that Plaintiffs may only challenge the Administrator's wage determinations for dump truck drivers in certain counties in northern Nevada because Plaintiffs have waived other potential arguments. (ECF No. 20 at 14-15.) Defendant contends that because Plaintiffs only raised substantive arguments with the Board regarding the wage determination for dump truck drivers in the Counties, Plaintiffs have thus waived other arguments beyond this issue. (*Id.*) Plaintiffs counter that they are not limited to the issue Defendant asserts, but rather that they are challenging the Board's Decision "in its entirety." (ECF No. 26 at 7-9 (emphasis removed).) Plaintiffs direct the Court to their petition for review in the administrative record to highlight that they challenged multiple wage determination for various northern Nevada counties, and thus not limited to the issue as Defendant argues. (*Id.* at 8.) The Court agrees with Plaintiffs.

Defendant's assertion relies on the Board's Decision to reject what Defendant states are Plaintiffs' "other vague contentions as to different classifications of workers and different counties." (ECF No. 20 at 14 (citing ECF No. 16-2 at 21-22).) Defendant suggests the vague contentions are effectively a waiver because Plaintiffs did not raise any substantive arguments and thus have failed to "alert" the Department "to their position and contentions." (*Id.* (quoting *N. Plains Res. Council, Inc. v. Surface Transp. Bd.*, 668 F.3d 1067, 1081 (9th Cir. 2011).) However, a review of the administrative record and the Decision reveals that the Board recognized Plaintiffs had made requests in October 2019

---

[4]The parties' briefs additionally dispute whether the Administrator violated the Department's regulations by failing to investigate and consider NOLC's publicly available wage data. (ECF Nos. 18 at 21-24, 20 at 29-33.) Plaintiffs' reliance on 29 C.F.R. § 1.3 is inapposite because subsection (b)(3) makes clear that wages determined by State and local officials *may* be considered when making wage rate determinations. *See* § 1.3(b)(3). It does not place an affirmative obligation on the Administrator to do so. As such, and for the reasons discussed herein that summary judgment is granted to Defendant, the Court declines to address this issue further.

7

for review and reconsideration to the Administrator, and Plaintiffs "challenged the Administrator's determinations with respect to other classifications and other localities." (ECF No. 16-2 at 21.) The Board further states in its Decision that "[s]ome of [AGC's] arguments were similar to those presented in this appeal—that the Administrator erred by relying on group, super group, or statewide data to set prevailing wage rates." (*Id.*) Merely because the Board rejected the other challenges does not amount to a finding that Plaintiffs waived other arguments, nor can it be said that the Department was not made aware of Plaintiffs' positions and contentions simply because the Board opted to reject those other arguments. (*See* ECF No. 16-4.) Accordingly, the Court rejects Defendant's waiver argument.

### 2. Harm

Defendant argues that Plaintiffs do not have standing to bring the claims that have not been waived as they cannot demonstrate organizational or associational standing. (ECF No. 20 at 15-21.) Specifically, Plaintiffs do not have standing simply because the Board denied and rejected their petition for review, but rather, Plaintiffs must show both the groups' mission has been frustrated and has caused a diversion of resources. (*Id.* at 9-10 (citing *Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1154-55 (9th Cir. 2019)). Moreover, Defendant argues that Plaintiffs have failed to show "concrete and particularized harm" or that they have suffered "apparent financial injury" for their members to bring this action. (*Id.* at 14-16.) Citing to *Ass'n of Pub. Agency Customers v. Bonnerville Power Admin.*, 733 F.3d 939, 949-50 (9th Cir. 2013). Plaintiffs counter that because they are impacted by a regulatory act there is little question that there is injury under the APA. (ECF No. 26 at 10-15.) Additionally, Plaintiffs counter that under 29 C.F.R. § 7.2(b), the Board's own regulations establishes that associations of employers qualify as an interested party entitled to petition the Board. (*Id.*) The Court agrees with Plaintiffs.

29 C.F.R. § 7.2 establishes who may file petitions for review and subsection (b)(1) defines the term interested parties:

> (1) Any contractor, or an association representing a contractor, who is likely to seek or to work under a contract containing a particular

8

> wage determination, or any laborer or mechanic, or any labor organization with represents a laborer or mechanic, who is likely to be employed or to seek employment under a contract containing a particular wage determination, . . .

29 C.F.R. § 7.2(B)(1). Here, Plaintiffs are three Nevada trade associations that requested review and reconsideration of the Administrator's wage determinations. (ECF No. 23 at 2.) The Board denied Plaintiffs' request for review (ECF No. 16-2 at 1-22), and Plaintiffs brought this action under § 702 of the APA (ECF No. 23). *See* 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."). The Department's regulations and the APA support the finding that Plaintiffs have standing as trade associations seeking redress of the Board's Decision.

In sum, the Court finds that the Court has subject matter jurisdiction over this action, *see McCauley*, 264 F.3d at 957, and that Plaintiffs have standing. The Court thus denies Defendant's motion to dismiss under Rule 12(b)(1).

### B.     Judicial Review Under the APA

The APA limits the scope of judicial review of agency actions. A court may reverse an agency decision only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The Ninth Circuit has established that an agency's action is "arbitrary and capricious" if (1) the agency fails to consider an important aspect of a problem; (2) an agency offers an explanation for the decision that is contradictory to the evidence; (3) the agency's decision is so implausible that it could not be ascribed to a difference in view or the product of agency expertise; or (4) the agency's decision is contrary to the governing law. *See Lands Council v. Powell*, 379 F.3d 738, 743 (9th Cir. 2004), *amended by* 395 F.3d 1019 (9th Cir. 2005). A review under this standard is "narrow, and a reviewing court may not substitute its judgment for that of the agency." *United States v. Snoring Relief Labs, Inc.*, 210 F.3d 1081, 1085 (9th Cir. 2000). A court must uphold the agency opinion if it is reasonable or rationally based. *See Nat.*

///

*Res. Def. Council, Inc. v. United States EPA*, 966 F.2d 1292, 1297 (9th Cir. 1992) (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837, 843-44 (1984)).

The Court will next turn to the two substantive two issues raised in the parties' cross-motions for summary judgment.

### 1. DBA

Plaintiffs argue that the Board's Decision was "arbitrary and capricious" in that it violated the DBA because the Administrator was prohibited from using wage rates from Clark County to make wage rate determinations for northern Nevada civil subdivisions. (ECF No. 18 at 17-19.) Plaintiffs contend that 40 U.S.C. § 3142(b) confines the Administrator to civil subdivision of Nevada and "not the entire State itself" in which work is to be performed when determining the prevailing wage. (*Id.* at 18.) The Administrator's use of wage rates from labor markets hundreds of miles away and known to be higher than wage rates in northern Nevada bears no relationship with the conception of "prevailing wage." (*Id.* at 19.) Defendant counters that the Administrator acted reasonably when determining wage rates because the DBA permits the use of information outside of a specific county. (ECF No. 20 at 21-26.) Defendant further counters that the statute provides no specific method as to how the Administrator must determine the prevailing wage rates, and it was reasonable to use information from a specific county. (*Id.*) The Court agrees with Defendant.

"Congress has given the Department the authority to determine the prevailing wage for Davis-Bacon purposes." *United States ex rel. Local 342 Plumbers & Steamfitters v. Caputo Co.*, 321 F.3d 926, 932 (9th Cir. 2003). Section 3142 of the DBA sets forth the "rate of wages for laborers and mechanics" and subsection (b) provides the following with respect to the prevailing wage:

> (b) Based on prevailing wage.--The minimum wages shall be based on the wages the Secretary of Labor determines to be prevailing for the corresponding classes of laborers and mechanics employed on projects of a character similar to the contract work in the civil subdivision of the State in which the work is to be performed, or in the District of Columbia if the work is to be performed there.

40 U.S.C. § 3142(b) (emphasis omitted.)

Plaintiffs rely on the text of § 3142(b) to assert that there is an unambiguous prescribed method upon which to determine the prevailing wage and that the Department is confined to wage rates from "the civil subdivision of the State" where the work is to be performed. (ECF No. 18 at 18.) But Plaintiffs overlook the authority § 3142(b) vests to the Secretary of Labor. A plain reading of the entire section supports the interpretation that the Secretary has broad discretion to determine the prevailing wage. While Defendant relies on the term "civil subdivision," the DBA provides no guidance or definition as to this term, thus, contrary to Plaintiffs' assertion, the prescribed method is the opposite of unambiguous. Plaintiffs' argument is therefore infirmed.

Moreover, as another circuit observed, the legislative history of the DBA (albeit not crystal clear), suggests that "Congress did not view the language in the statute as foreclosing the Secretary from implementing the [Davis-Bacon] Act in a way necessary to achieve its purposes." *Bldg. & Constr. Trades' Dep't v. Donovan*, 712 F.2d 611, 618 (D.C. Cir. 1983). Additionally, "Congress anticipated that the general authorization to the Secretary to set the prevailing wage would encompass the power to find a way to do so in the interstitial areas not specifically provided for in the statute." *Id.* (citation omitted). Because the Administrator did not have sufficient wage information to determine the prevailing wages for localities across Nevada when the wage survey period ended, the Administrator acted reasonably—as Defendant argues and the Court agrees—in looking to information outside of the specific areas at issue, especially when there is no clear method provided by statute in determining the prevailing wage rates. As such, the Court finds that the Administrator acted within the statutory mandate set forth in § 3142(b). The Decision therefore does not violate the DBA and not arbitrary and capricious for the Court to set aside the Decision under the APA.

### 2. Regulation Violation

Citing to the various provisions of 29 C.F.R. §§ 1.2–1.7, Plaintiff argues that the Board violated the Department's own regulations for the following reasons. (ECF No. 18

11

at 19-20.) Section 1.2(a) defines "prevailing wage" as the "wage paid to the majority (more than 50 percent) of the laborers or mechanics in the classification on similar projects in the area during the period in question." (*Id.* at 19.) Section 1.2(b) further defines "area" as "the city, town, village, county or other civil subdivision of the State in which the work is to be performed." (*Id.* at 19-20.) Section 1.3 provides that the Administrator will encourage voluntary submission of wage rate data that reflects wages paid on various types of construction "in the area." (*Id.* at 20 (emphasis omitted).) Moreover, § 1.7(a)-(c) states that (1) the area will be the county unless sufficient wage data is unavailable, (2) if no sufficient wage data is available for similar projects in the past year, then wages for similar projects in surrounding counties may be considered, provided that data from metropolitan counties may not be used for rural counties and vice versa, and (3) if there is insufficient data from similar projects in surrounding counties or the State in the past year, then wages from more than a year prior to the wage survey or the request for a wage determination may be considered. (*Id.*) Defendant counters that the Administrator holds broad discretion to determine the scope of the wage survey. (ECF No. 20 at 26-29 (citing § 1.7(a)-(b)).) Defendant further argues that the Department's regulations does not bar collection of data from counties that are not immediately next to the civil subdivision, and the absence of a prohibition regarding the use of remote area data implies permissibility under the regulations. (*Id.* at 27.) Moreover, Defendant directs the Court to *Final Rule, Procedures for Predetermination of Wage Rates*, 46 FR 4306-01, 4310 (Jan. 16, 1981), to argue that the Department had rejected challenges to its authority to gather data on a statewide basis when it promulgated its regulations in 1981. (*Id.* at 28-29.) The Court is convinced by Defendant's arguments.

      29 C.F.R. § 1.7(a) provides, in relevant part, the following: "In making a wage determination, the area will *normally* be the county unless sufficient current wage data . . . is unavailable to make a wage determination." Subsection (c) further provides that, "[i]f there has not been sufficient similar construction in surround counties *or in the State* in the past year, wages paid on projects completed more than one year prior to the

beginning of the survey or the request for a wage determination, as appropriate, may be considered." 29 C.F.R. § 1.7(c) (emphasis added). While the Administrator would "normally" use county data in making the wage determination, the administrative record here suggests—and the parties appear to do not dispute—that the Administrator did not have sufficient data submitted during the wage survey to calculate the prevailing wage rate for the Counties when the survey closed. (ECF No. 16-2 at 5-6.) Despite Plaintiffs reliance on §§ 1.2(a)-(b), 1.3, and 1.7(a)-(c), the Court's reading of § 1.7(c) supports the finding that the Administrator is not confined to using data from counties immediately next to Carson City, Washoe, and Storey. Rather, data from other counties "in the State" is permissible. *See* § 1.7(c).

Even if the Court assumes that the language of the Department's regulations is ambiguous, the *Final Rule,* 46 FR at 4310, sheds further light on the scope of § 1.7 and affirms Defendant's position that the Administrator was not prohibited from using remote-area wage data. *See El Comite Para El Bienestar De Earlimart v. Warmerdam*, 539 F.3d 1062, 1070 (9th Cir. 2008) ("[T]he preamble language should not be considered unless the regulation itself is ambiguous.") The Assistant Secretary of Labor in 1981, addressing preamble objections to the use of the term "in the State" in § 1.7(c), stated the following:

> It has been our policy that in the unusual case where there is not sufficient current wage rate data available in a county or surrounding counties, we expand the area of consideration. We believe that the use of 'in the State' is consistent with our policy, but we do not envision except in the most extraordinary circumstances that data from an entire State would be needed to make a wage determination. In view of the comments, we have added 'in surrounding counties' immediately before 'in the State' in the text to clarify that when circumstances arise, the first consideration outside the county will be the surrounding counties.

*Final Rule,* 46 FR at 4310 (internal quotes in original). In light of the then Assistant Secretary's statement, it would appear that the Department sought for the regulation to allow the Administrator to expand the area of consideration in "extraordinary circumstances." As stated above, when the survey closed, the Administrator had insufficient data. *See supra* at p. 11. Despite contacting interested parties and NOLC, providing NOLC with additional information about the wage survey, and inviting NOLC to

13

attend pre-survey briefings, the Administrator did not have sufficient wage information need to determine prevailing wages. Under those circumstances, the Court finds that it was within reason and the Administrator's discretion, and within the scope of § 1.7, for the Administrator to expand the area of consideration when determining the prevailing wage.

In sum, because the Decision was not arbitrary or capricious and because the Department was reasonable and did not engage in an unlawful action, the Board's Decision is affirmed. The Court accordingly grants summary judgment in favor of Defendant.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Defendant Marty Walsh's motion to dismiss for lack of subject matter jurisdiction (ECF No. 20) is denied.

It is further ordered that Defendant's alternative motion for summary judgment (ECF No. 20) is granted.

It is further ordered that Plaintiffs' motion for summary judgment (ECF No. 18) is denied.

The Clerk of Court is directed to enter judgment in favor of Defendant and to close this case.

DATED THIS 11th Day of August 2022.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE